IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

CHARLES NELSON,

    Plaintiff,

v.

THOMAS LOFTUS, et al.,

    Defendants.

CIVIL ACTION
NO. 17-3247

## MEMORANDUM

**SCHMEHL, J. /s/ JLS**                                **JANUARY 10, 2019**

    Defendant Schneider National Carriers, Inc. ("Schneider National") moves this Court for summary judgment of Plaintiff Charles Nelson's negligence claims against Schneider National and dismissing the company with prejudice. Mr. Nelson brings this negligence action against Defendant Thomas Loftus and Schneider National to recover damages for personal injuries suffered during a "road-rage" incident where Mr. Loftus exited his vehicle – a vehicle owned by Schneider National – and allegedly physically assaulted Mr. Nelson. At issue before this Court is whether Mr. Loftus, an employee driver of Schneider National, acted within the scope of his employment during this incident, and whether Schneider National knew or should have known of Mr. Loftus' violent propensity in employment situations. For the reasons below, this Court finds no genuine issue of material fact exists and will grant Schneider National's motion for summary judgment.

I. **UNDISPUTED FACTS**[1]

On November 25, 2015, Mr. Nelson alleges he merged into traffic on Route 222 in Reading, Pennsylvania, where Route 222 becomes one lane near Maidencreek, Pennsylvania. (ECF Docket No. 35, ¶ 8.) While merging, Mr. Nelson entered the lane of traffic in front of Mr. Loftus who was operating a semi-trailer truck owned by Schneider National. (Id. at ¶¶ 6, 8.) After Mr. Nelson merged in front of Mr. Loftus and almost causing an accident, Mr. Loftus "displayed angry gestures with his hands and screamed as [Mr. Nelson] attempted to merge in front of [Mr. Loftus'] truck." (ECF Docket No. 1, ¶ 13; ECF Docket No. 35, ¶ 9.) After coming to a complete stop at a red light, Mr. Loftus exited the cab of his truck, approached Mr. Nelson's vehicle, and began "slamming his fists against [Mr. Nelson's] driver's side window." (ECF Docket No. 1, ¶ 14; ECF Docket No. 35, ¶¶ 11-12.) According to Mr. Nelson's testimony, Mr. Loftus banged on the car window and roof, yelled obscenities and racial epithets, and tried to bait Mr. Nelson into fighting him. (ECF Docket No. 1, at ¶ 14; ECF Docket No. 35, ¶ 12.); *see also* ECF Docket No. 34-1, Ex. C., at 51:7-19; 53:5-11; 54:24-55:8.

As Mr. Loftus yelled obscenities at Mr. Nelson, the two trucks in front of Mr. Nelson proceeded through the green light. (ECF Docket No. 34-1, Ex. C., at 53:22-25; ECF Docket No. 35, ¶ 13.) Instead of continuing through the intersection, Mr. Nelson parked his car and attempted to exit his vehicle. (ECF Docket No. 35, ¶ 14.) As Mr. Nelson attempted to exit his vehicle, Mr. Loftus "maliciously slammed the driver's side door multiple times against [Mr. Nelson's] head and face." (ECF Docket No. 1, ¶ 16; ECF Docket No. 35, ¶¶ 14-16, 21.) In doing so, Mr. Loftus trapped Mr. Nelson's head

---

[1] While the parties submitted a joint stipulation of undisputed facts (Docket No. 35), it appears the document contains less stipulated facts and more regurgitated argument from all parties.

between the frame of the car and the driver's side door. (ECF Docket No. 35, ¶¶ 18-20.) Following the altercation, Mr. Nelson called the Northern Berks Police Department and the police department charged Mr. Loftus with harassment under 18 Pa.C.S. § 2709. (Id. at ¶¶ 17-19.)

## II. **STANDARD OF REVIEW**

Summary judgment is proper when there is no genuine dispute of material fact and the movant is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(a). A dispute as to a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). On a motion for summary judgment, the court must consider the "underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion." *Slagle v. Cnty. of Clarion*, 435 F.3d 262, 264 (3d Cir. 2006) (citations omitted). If the movant carries its initial burden of showing the basis of its motion, the burden shifts to the non-moving party to go beyond the pleadings and point to "specific facts showing that a genuine issue exists for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). In other words, the non-moving party "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue." *Podobnik v. US. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (citation and internal quotation marks omitted). Summary judgment must be granted against a non-moving party who fails to sufficiently "establish the existence of an essential element of its case on which it bears the burden of proof at trial." *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 265 (3d Cir. 2014).

**III. ANALYSIS**

Plaintiff Charles Nelson pursues a theory of vicarious liability against Defendant Schneider National, arguing the negligent conduct of its employee, Defendant Thomas Loftus, occurred while Mr. Loftus was "acting in the scope of his employment and in furtherance of the business of defendant." Mr. Nelson also pursues a theory of negligent hiring, training, and supervision, arguing Schneider National should be held liable for the actions of its employee as it knew or should have known Mr. Loftus was dangerous, careless, or incompetent, and that his behavior would harm a third person. This Court finds no genuine issues of material fact exist regarding Mr. Nelson's claims against Schneider National. For the reasons stated below, Schneider National will not be held liable under a theory of vicarious liability or negligent hiring, training, and supervision.

1. No genuine issue of material fact exists for a claim of vicarious liability against Schneider National.

Under Pennsylvania law, an employer may be held liable for the negligent acts of its employee which causes injury to a third party, if the negligent acts were committed during and within the scope of employment. *Fitzgerald v. McCutcheon*, 410 A.2d 1270, 1271 (Pa. Super. Ct. 1979); *see also Lunn v. Boyd*, 169 A.2d 103 (Pa. 1961). Not limited to negligent acts, liability may also extend to acts committed by the employee which are intentional or criminal. *Id.* Under vicarious liability as defined by the Restatement (Second) of Agency § 228, a plaintiff's conduct is within the scope of employment if the employee's conduct: "(1) is of a kind and nature that he is employed to perform; (2) occurs substantially within the authorized time and space limits designated by his employer; (3) is driven by a desire to serve the employer; and (4) if force is intentionally used by the employee against another, the use of force is not unexpected by the

employer." *Costa v. Roxborough Mem'l Hosp.*, 708 A.2d 490, 493 (Pa. Super. Ct. 1998); *see also Schloss v. Sears Roebuck and Co.*, 2005 WL 433316, at *2 (E.D. Pa. 2005); *see also* Restatement (Second) of Agency § 228 (1958) ("Conduct of a servant is not within the scope of employment if it is different in kind from that authorized, far beyond the authorized time or space limits, or too little actuated by a purpose to serve the master.").

Determining whether a person acted within the scope of employment is typically a question for the jury. *Costa*, 708 A.2d at 493. But, where an employee commits an act "encompassing the use of force which is excessive and so dangerous as to be totally without responsibility or reason, the employer is not responsible as a matter of law." *Fitzgerald*, 410 A.2d at 1272; *see also McMaster v. Reale*, 110 A.2d 831, 832 (Pa. Super. Ct. 1955) (concluding "a master is not liable for the willful misconduct of his servant, and that such willful misconduct, while it may be within the course of the employment, is not within the scope thereof."). Under Pennsylvania law, an assault committed by an employee upon another individual for personal reasons or in an outrageous manner is not "actuated by an intent to perform the business of the employer" and falls outside the scope of employment. *Costa*, 708 A.2d at 493; *see also Potter Title & Trust Co. v. Knox*, 113 A.2d 549, 551 (Pa. 1955) (finding acts committed by employee in an outrageous or whimsical manner are not within the scope of employment). In support of summary judgment, Schneider National provides case law like this case where employees departed from the scope of their employment. (ECF Docket No. 34-1.)

In *Lunn*, the plaintiff and a Yellow Cab Company employee got into a physical altercation while the employee was on-duty. *Lunn*, 169 A.2d at 104. The plaintiff tried to hail a cab but the cab driver ignored him. *Id.* The two parties exchanged words and

the driver ended up stabbing the plaintiff as a result. *Id.* The court determined the fight between plaintiff and employee was a simple street fight "some distance from the cab under circumstances totally foreign to the employee's job and for a purpose completely disassociated from it." *Id.* at 105. The court, applying plaintiff's own testimony and considering the events surrounding the fight, concluded vicarious liability of the cab company did not exist as a matter of law.[2] *Id.* The facts in this case are similar here as both incidents occurred outside and away from the vehicles used to carry out the duties of a job.

In *Potter*, the court declined to impose liability on the employer. *Potter Title & Trust Co. v. Knox*, 113 A.2d at 550. While employees of the Yellow Cab Company were on strike, a taxicab driver and employee of the Owl Taxicab Company pulled up to the intersection where the Yellow Cab Company employees were striking and "opened the window of his cab and fired a revolver toward the men on the corner" and killed a Yellow Cab Company employee. *Id.* The plaintiff relied on testimony appearing to show Owl Taxicab Company official, Silas Knox, encouraged company employees to protect

---

[2] In *Lunn*, Plaintiff's allegations differed from the employee's testimony during cross-examination. *Lunn v. Boyd*, 169 A.2d 103, 103 (Pa. 1961). Plaintiff alleged the employee cab driver walked over to the plaintiff, who stood about twenty to thirty feet away, and lunged at the plaintiff with an open knife. *Id.* at 104. But, the employee testified the cab was stopped at the cabstand when the plaintiff approached and asked for a ride. *Id.* The driver informed the plaintiff he had just received a call to pick up a passenger at another address and that the plaintiff would have to wait for another cab. *Id.* According to the employee:
> The plaintiff then opened the front door opposite the driver, and attempted to get into the front seat of the cab, but did not do so, while he continued to verbally abuse Boyd. The latter's [sic] shut off the motor, got out on the driver's side and walked around to the rear of the cab. He stopped momentarily; then, after the plaintiff stepped back from the cab, he walked up and closed the door which the plaintiff had opened. When Boyd turned to walk back to the driver's side, intending to re-enter the cab, the plaintiff hit him, knocked him down and broke his nose.

*Id.* The court provided in dicta that under the employee's testimony, the assault was closely connected to the moment plaintiff tried to become a passenger and enter the cab which would possibly be "in line with the cab driver's job and part of a transaction involving his work . . .". *Id.* at 105. However, the court refused to apply this interpretation and concluded the plaintiff was bound by his own allegations in the complaint – which ultimately failed to prove a case against the defendant employer. *Id.*

themselves against "attacks" by members of the Yellow Cab Company who were on strike. *Id.* But, the court determined the employees use of a revolver for protection, given the circumstances, was unnecessary and outside the scope of his employment. *Id.* at 552. Specifically, multiple witnesses testified: none of the strikers possessed firearms; the remarks directed at the employee were not particularly offensive; and none of the strikers made a move to leave the sidewalk and approach the employee in his taxicab. *Id.* Again, the Court determined the employee departed from the scope of his employment and refused to hold the employer vicariously liable.

In *Zaney Bar*, a bartender shot a customer who was annoying a female patron. *Howard v. Zaney Bar*, 85 A.2d 401 (Pa. 1993). While the owner owed a duty to keep the bar reasonably well policed, and the owner hired the bartender and instructed him to maintain order in the bar, the court still concluded the bartender acted outside the scope of his employment. *Howard v. Zaney Bar*, 85 A.2d at 403. The court determined that while the bartender was authorized to use reasonable means to maintain an orderly establishment, the bartender departed from the scope of his employment when he "pulled out a gun and shot plaintiff." *Id.* at 402. "Such a use of violence under these circumstances is shocking and a gross abuse of all authority the bartender possessed to maintain order." *Id.*

Before addressing Mr. Loftus' intentional use of force against Mr. Nelson, this Court will address the first three prongs of the "scope of employment." First, whether Mr. Loftus' actions are of the kind of nature that he is employed to perform. This Court answers this question in the negative as Schneider National hired Mr. Loftus to drive its trucks. As Schneider National argues, it has a "Violence Free Workplace Policy" which

7

is a zero-tolerance policy for workplace violence by or against an associate. (ECF Docket No. 34-1, at 10-11) (citing Ex. F., at 38:11-22.) Mr. Loftus testified "his actions in getting out of his vehicle to tell another driver that he thought they did something dangerous would be frowned upon by Schneider and would not be approved of by Schneider." (Id. at 11) (citing Ex. D., at 87:14-23.) Because Mr. Loftus' actions and conduct were not of the kind of nature Schneider National employed him to perform, the first prong fails.

Second, and like the above, Mr. Loftus' actions did not occur substantially within authorized time and space limits designated by Schneider National. Both Mr. Nelson and Mr. Loftus freely admit Mr. Loftus exited the tractor trailer and approached Mr. Nelson's vehicle. (Id.) (citing Ex. A., at ¶ 16; and Ex. D., at 60:9-17.) As Schneider National argues, exiting the tractor trailer and confronting another driver does not fall within the authorized time and space limits designated by Schneider. (Id. at 11.) As exiting the vehicle and allegedly assaulting another driver is not substantially within the authorized time and space limits designated by Schneider National, the second prong fails.

Third, Mr. Loftus' actions certainly were not driven by a desire to serve Schneider National. Mr. Nelson presents no evidence the alleged assault served Schneider National and was part of the job duties associated with driving a truck for the company. As provided by Schneider National, Mr. Loftus testified he was not in contact with anybody from Schneider National at the time of the alleged incident. (Id. at 12) (citing Ex. D, at 69:8-13.) Also, Mr. Loftus testified the incident was personal in nature and did not involve Schneider National. (Id.) (citing Ex. D, at 93:23-94:9.) Specifically, Mr. Loftus stated: "No. I felt that this was a personal incident that didn't involve them, so I didn't let

them know." (ECF Docket No. 34-1, Ex. D., at 94:7-9.) As Mr. Loftus' actions were personal in nature and not out of a desire to serve Schneider National, the third prong also fails.

And finally, Mr. Loftus' use of intentional force against Mr. Nelson was unexpected by Schneider National and falls outside the scope of his employment. Also, given Mr. Loftus' admitted his conduct was purely personal, it falls outside the scope of his employment. Schneider National had no reason to expect Mr. Loftus – or any of its drivers – would use force on another person at any time while driving its trucks. (Id. at 12.) As Schneider National argues, it lacked knowledge of any possible violent propensities from Mr. Loftus' past even after conducting reasonable investigation. (Id.) Mr. Loftus even testified he never before exited his vehicle to confront another driver. (Id.) (citing Ex. D., at 70:6-14.) Because Mr. Loftus used force unexpected by Schneider National as a truck driver, and because Mr. Loftus' actions were motived by reasons personal to Mr. Loftus, the fourth prong fails.

When this principle is applied to the facts of this case, it becomes clear that Mr. Loftus' act of *exiting* his vehicle and allegedly *assaulting* Mr. Nelson was outside the scope of his employment. (emphasis added). Mr. Loftus' acts were motivated by reasons personal to himself and did not further the purpose of his employment as a driver for Schneider National. From the moment he stepped out of his vehicle, Mr. Loftus was not subject to the right of his Schneider National's control. As Schneider National argues, Mr. Loftus stepping out of the vehicle and attempting to assault another driver is vastly different than Mr. Loftus causing an accident or injury while driving the vehicle. (17-cv-3247: Oral Argument on Nov. 6, 2018). And clearly, Mr. Loftus' act was so outrageous

9

that it seems unlikely the intentional force used was "not unexpected" by Schneider National. Because Mr. Loftus' behavior fails to satisfy any of the four prongs, his conduct falls outside the scope of his employment with Schneider National.

Conversely, Mr. Nelson argues Mr. Loftus' conduct is within the scope of his employment because it was "directly connected to Loftus' employment" and Mr. Loftus' conduct was not as far removed from his employment as it was in *Brezenski* or *Lunn*. (ECF Docket No. 44, at 10-11) (17-cv-3247: Oral Argument on Nov. 6, 2018). In *Brezenski*, the court concluded the servant was not using the master's chattel at the time of the conduct, nor did the servant harm the individuals while driving the truck. *Brezenski v. World Truck Transfer, Inc.*, 755 A.2d 36, 42 (Pa. Super. Ct. 2000). In *Lunn*, the court considered the time at which the assault occurred under defendant's testimony – as the "plaintiff was trying to become a passenger and enter the cab" – but still determined the conduct to be outside the scope of employment. *Lunn*, 169 A.2d at 105. Specifically, the court stated: "This it is urged is in line with the cab driver's job and part of a transaction involving his work in the transportation of passengers and in the protection of his employer's property." *Id.* But, as we addressed above, Mr. Loftus did not cause an accident while driving for Schneider National, and the incident did not occur while Mr. Nelson "was trying to become a passenger" in one of Schneider National's trucks. Therefore, Mr. Nelson's temporal proximity to employment argument holds no weight.

Also, Mr. Loftus argues this Court is in no position to determine Schneider National's liability given a genuine issue of material fact exists as to whether Mr. Loftus physically assaulted Mr. Nelson. (ECF Docket No. 43, at 5-7.) Mr. Loftus argues he

"exited his vehicle to advise Plaintiff that an accident nearly occurred as a result of Plaintiff's aggressive driving maneuver." (Id. at 5.) Specifically, and without supporting case law, Mr. Loftus argues he said/she said nature of the alleged confrontation precludes this Court from basically making a credibility determination typically reserved for the jury. (Id. at 7.) But, as Schneider National correctly argues:

> If Loftus did commit the assault, then he did so outside the course and scope of his employment . . . [and] therefore, Schneider could not be held vicariously liable. *However, if the court believes Loftus, that the assault did not occur, then Schneider also could not be vicariously liable because there is no underlying tort.*

(ECF Docket No. 52, at 2) (emphasis added) (citing *Guffey v. Logan*, 563 F. Supp. 951, 954 (E.D. Pa. 1983) (finding that "[t]he predicate then for finding an employer vicariously liable is that the employee was negligent, not that the latter was liable.")). So, whether an alleged assault occurred is irrelevant to this Court's analysis in this case. This Court will not entertain Mr. Loftus' specious argument against summary judgment.

Because Mr. Loftus' actions fall outside the scope of employment as a matter of law, Schneider National cannot be held vicariously liable for Mr. Loftus' conduct against Mr. Nelson.

2. <u>No genuine issue of material fact exists for a claim of negligent hiring, training, and supervision, against Schneider National.</u>

In a cause of action for negligence, the plaintiff must demonstrate the defendant owed a duty of care to the plaintiff, the defendant breached that duty, the breach resulted in an injury to the plaintiff, and the plaintiff suffered an actual loss or damage. *Martin v. Evans*, 711 A.2d 458 (Pa. 1998). In Pennsylvania, a showing of negligent hiring, training, and supervision, requires: 1) employer defendant knew or should have known of the violent propensity of the employee; and 2) such employment creates a situation in

11

which a third party may be harmed. *Rios v. Marv Loves 1*, 2015 WL 5161314, at *13 (E.D. Pa. 2015); *see also Coath v. Jones*, 419 A.2d 1249, 1250 (Pa. Super. Ct. 1980) (citing *Dempsey v. Walso Bureau Inc.*, 246 A.2d 418 (Pa. 1968) (applying Second Restatement of Torts Section 317 to find employer could be held liable if the plaintiff could prove "that the employer knew, or in the exercise of ordinary care, should have known of the necessity for exercising control of [the employee]," but concluding that "there [was] no evidence of record to show either knowledge or reason for knowledge on the part of [the employer] of [the employee's] conduct.")). "A negligent hiring, training, retention, and supervision claim refers to an employer's breach of its duty to properly train its employees." *Martin–McFarlane v. City of Philadelphia*, 299 F.Supp.3d 658, 672 (E.D. Pa. 2017). Notably, the courts now emphasize the "importance of the defendant employer's knowledge of prior conduct by the employee." *Hutchison ex rel. Hutchison v. Luddy*, 742 A.2d 1052, 1059 (Pa. 1999).

This common law principle, now recognized under Section 317 of the Restatement (Second) of Torts, applies to an employee acting outside the scope of employment. The Pennsylvania Supreme Court in *Hutchinson v. Luddy*, 742 A.2d 1052 (Pa. 1999), requires examination for a claim of negligent hiring and/or retention with an analysis of both common law and the law set forth in Section 317. Specifically, Section 317 provides:

> A master is under a duty to exercise reasonable care so to control his servant while acting outside the scope of his employment as to prevent him from intentionally harming others or from so conducting himself as to create an unreasonable risk of bodily harm to them, if
>
> > (a) the servant

> > (i) is upon the premises in possession of the master or upon which the servant is privileged to enter only as his servant, or
> > (ii) is using a chattel of the master, and
>
> (b) the master
> > (i) knows or has reason to know that he has the ability to control his servant, and
> > (ii) knows or should know of the necessity and opportunity for exercising such control.

Restatement (Second) of Torts § 317 (1965). According to the Comment to Section 317, the duty of the master to control the servant while acting outside the scope of employment applies where "the servant is upon the master's premises or upon premises which he is privileged to enter only as the servant, § 317(a)(i), or where the servant is using the master's chattel, § 317(a)(ii)." *Brezenski*, 755 A.2d at 42; *see also* Restatement (Second) of Torts § 317 (1965), comment a.

Mr. Nelson argues Schneider National should still be found liable for its negligent supervision of Mr. Loftus given Mr. Loftus' intentional or criminal act and Schneider National's negligent supervision of Mr. Loftus. (ECF Docket No. 44, at 12.). Given the incident occurred on Route 222, Mr. Loftus was not on Schneider National's premises at the time of the alleged attack, nor did he enter the premises based upon a privilege afforded to him by Schneider National. (ECF Docket No. 1, ¶ 9.) Also, Mr. Nelson was not a customer of Schneider National and Mr. Loftus' contact with Mr. Nelson was not related to his job even though Mr. Loftus was driving one of Schneider National's trucks. (Id. at ¶¶ 11-12.) As stated above, this was not an incident where Mr. Loftus' reckless or unlawful driving caused the injuries. The alleged assault did not physically involve Schneider National's vehicle. Likewise, Mr. Loftus did not use his "master's chattel" to

commit the alleged assault; his "master's chattel" was only used as a means of transportation to carry out the duties of his job.

Also applicable here is Section 213 of the Restatement (Second) of Agency. Section 213 provides:

> A person conducting an activity through servants or other agents is subject to liability for harm resulting from his conduct if he is negligent or reckless:
>
> ....
>
> in the employment of improper person or instrumentality in work involving risk of harm to others:
>
> in the supervision of the activity;
>
> or in permitting, or failing to prevent, negligent or other tortious conduct by persons, whether or not his servants or agents, upon premises or with instrumentalities under his control.

Restatement (Second) of Agency § 213 (1958). According to the Comment to Section 213, liability under this section "exists only if all the requirements of an action of tort for negligence exist." Restatement (Second) of Agency § 213 (1958), comment a.

Applying ordinary negligence principles, an employer may be negligent for failing to exercise reasonable care in determining an employee's propensity for violence in an employment situation where the violence could harm a third person. *Brezenski*, 755 A.2d at 42 (citing *Dempsey v. Walso Bureau, Inc.* 246 A.2d 418 (Pa. 1968)). In these situations, the plaintiff must establish the employer breached a duty to protect others against risk of harm. *Id.* But, where the plaintiff does not enjoy a special relationship with the employer, "the duty owed may be inferred from the general duty imposed on all persons not to place others at risk of harm through their action." *Id.* (citing *Zanine v. Gallagher*, 497 A.2d 1332 (Pa. Super. Ct. 1985)). The scope of this duty is limited to

those risks reasonably foreseeable by the actor given the circumstances of the case. *Id.* (citing *Zanine v. Gallagher*, 497 A.2d 1332 (Pa. Super. Ct. 1985)).

Mr. Nelson presents no evidence Schneider National was aware or could have been aware of Mr. Loftus' alleged propensity to injure other people to satisfy a showing of negligent hiring. Indeed, neither party presented evidence that Mr. Loftus even exhibited violent tendencies prior to his alleged assault. According to Schneider and the evidence produced in discovery, Schneider National performed extensive evaluation and background checks during the application and hiring process. (ECF Docket No. 34-1, at 17.) "This consisted of an application screening, background checks via a third-party screening agency (HirefcRight), the gathering of Loftus' Motor Vehicle Report and a Commercial Driver's License Information Review ("CDLIS"), and ordering a Pre-employment Screening Program for experienced drivers." (Id.) (citing Ex. E., at 11:13-12:4-19; 16:12-16). After completing the above steps, Schneider National's compliance team reviewed Mr. Loftus' file and ensured that his Driver Qualification ("DQ") file contained all components required by federal regulations. (Id.) (citing Ex. E., at 13:15-14:6). According to Schneider National, the above procedures revealed nothing to suggest Mr. Loftus had a history of violent conduct or violent tendencies. (Id. at 17.) Mr. Loftus also testified he had never been involved in any physical altercation with another person as an adult. (Id.) (citing Ex. D., at 83:16-24).

Mr. Nelson also fails to establish basic negligence required to show negligent training on behalf of Schneider National. The duty owed depends upon the nature of the relationship between the parties at the time of the injury. *Pittsburgh National Bank v. Perr*, 637 A.2d 334, 336 (Pa. Super. Ct. 1994). As this Court addressed above, a lack of

special relationship with a plaintiff requires only a "general duty imposed on all persons not to place others at risk of harm through their actions" limited to those acts which are reasonably foreseeable. *Brezenski*, 755 A.2d at 42. Again, Mr. Nelson fails to introduce evidence that would make Mr. Loftus' alleged assault foreseeable by Schneider National. Specifically, "the alleged conduct was not intended or otherwise part of plaintiff's job duties as a truck driver. The alleged assault did not take place in the truck," and Schneider National had no reason to know or foresee that Mr. Loftus would exit his vehicle and assault anyone. (ECF Docket No. 34-1, at 19.) According to Schneider National, its drivers are required to abide by the laws of the Commonwealth of Pennsylvania, including any laws against assault, disorderly conduct, and any other criminal law. (Id. at 19-20.) Derrick Westbrook, the Director of Safety at Schneider National, testified Mr. Loftus' actions were unacceptable and that Schneider National does not tolerate anybody physically harming another person. (Id. at 20) (citing Ex. F., at 65:19-66:8). Specifically, all associates are informed of Schneider National's policies during onboarding and are required to complete harassment training. (Id.) (citing Ex. F., at 40:2-7). Mr. Westbrook continued: "Mr. Loftus went through advanced driver training and then, when he was rehired before the incident, he went through the experienced driver training . . . [and] completed harassment training on a computer program." (Id.) (citing Ex. F., at 45:3-17; 46:21-25).

And finally, Mr. Nelson fails to present evidence of Schneider National's negligent supervision over Mr. Loftus. Like our analysis above, negligent supervision exists "where the employer fails to exercise ordinary care to prevent an intentional harm to a third party which (1) is committed on the employer's premises by an employee acting

outside the scope of his employment and (2) is reasonably foreseeable." *Belmont v. MB Inv. Partners, Inc.*, 708 F.3d 470, 489 n.24 (3d Cir. 2013) (citing *Petruska v. Gannon Univ.*, 462 F.3d 294, 309 n.14 (3d Cir. 2006). As Schneider National argues, negligent supervision requires a showing that Mr. Loftus "committed bad acts during his employment which would have or should have put Schneider on notice of some violent propensity." (ECF Docket No. 34-1, at 21.) Again, Mr. Nelson fails to provide evidence of Mr. Loftus' propensity for violent behavior and fails to provide evidence Mr. Loftus ever physically confronted another driver on the road while working for Schneider National. (Id.) Specifically, Schneider National never needed to reprimand Mr. Loftus prior to this incident with Mr. Nelson. (Id.) Mr. Nelson also provides no evidence showing Mr. Loftus ever physically or verbally abused other drivers in the past. (Id.)

In *Brezenski*, the court determined no special relationship existed and the only duty owed to them was a general duty not to place the plaintiff in risk of harm that is reasonably foreseeable. *Brezenski*, 755 A.2d at 42-43. The court in *Brezenski* relied on cases from other jurisdictions leading to this same result which are instructive to this Court. Specifically, in *Connes v. Molalla Transport System Inc.*, 831 P.2d 1316 (Colo. 1992), the court affirmed an entry of summary judgment where a long-haul truck driver sexually assaulted a night clerk at a hotel in Colorado. *Brezenski*, 755 A.2d at 43 (citing *Connes*, 831 P.2d at 1323). The court determined the employer had a duty to use reasonable care in hiring a safe driver who would not create a danger to the public in carrying out the duties of the job, but concluded: "the duties of this driver were restricted to hauling freight on interstate highways, which involved only incidental contact with third persons who had no special relationship with the employer." *Id.* at 44 (citing

*Connes*, 831 P.2d at 1323). The court in *Connes* declined to hold the employer liable for negligent hiring.

Similarly, in *Guidry v. National Freight*, 944 S.W.2d 807 (Tex. App. 1997), a long-haul truck driver lied in his employment application claiming he had no criminal record when he actually had a history of sexual misconduct which could be found in his military records, criminal records, and previous employment records. *Id.* at 44 (citing *Guidry*, 944 S.W.2d at 809). The employer never checked the employee's criminal record but instead checked the employee's driving record as required by law. *Id.* (citing *Guidry*, 944 S.W.2d at 809). While driving through Austin, Texas, the employee parked the truck and wandered through an adjacent neighborhood before stopping at a condominium complex parking lot. *Id.* (citing *Guidry*, 944 S.W.2d at 809). There he encountered a woman, dragged her into the adjoining apartment complex, and raped her. *Id.* (citing *Guidry*, 944 S.W.2d at 809). The victim sued the driver's employer alleging negligent hiring, supervision, and retention, of the employee. *Id.* (citing *Guidry*, 944 S.W.2d at 809). The court concluded the harm to the victim was not foreseeable and declined to hold the employer liable. *Id.* (citing *Guidry*, 944 S.W.2d at 810). The court determined the employer took steps necessary to prevent injury to the driving public by "determining the competency of a job applicant to drive one of its trucks." *Id.* (citing *Guidry*, 944 S.W.2d at 809-10). Specifically, the court in *Guidry* concluded, as stated in *Brezenski*:

> It found the purpose of this duty 'is to promote highway safety and prevent motor vehicle accidents, not to prevent general criminal activity.' The court refused to impose a duty on the employer of a long-haul driver to conduct a criminal background check on all new applicants, or periodic criminal checks on all current employees. It found the employer's duty was simply to hire competent drivers and that it would not 'require an

employer to insure the safety of those who come into contact with an employee by reasons other than his employment.'

*Id.* (citing *Guidry*, 944 S.W.2d at 809) (internal citations omitted).

This Court finds Schneider National's argument and the above cases persuasive considering the facts presently before this Court. While Schneider National has an obligation to hire drivers to operate its vehicles in a safe manner, Mr. Loftus' actions were unrelated to his employment. Schneider National should not be responsible for Mr. Loftus' unforeseeable conduct with individuals who have no relationship with Schneider National. Again, Mr. Loftus did not injure anyone because of his unsafe driving; Mr. Nelson came into contact with Mr. Loftus for reasons other than Mr. Loftus' employment with Schneider National. And while Mr. Nelson argues the "road rage" article posted on Schneider National's website identifying "road rage" as a common problem for truck drivers makes this incident foreseeable, this Court finds this argument unpersuasive. (ECF Docket No. 44, at 14-15.)

As there are no genuine issues of material fact, this Court declines to hold Schneider National liable for negligent hiring, training, and supervision.

## IV. CONCLUSIONS

In the accompanying order, this Court grants Defendant Schneider National's motion for summary judgment. No genuine issue of material fact exists regarding Schneider National's liability for acts committed by Mr. Loftus outside the scope of his employment. As a matter of law, Schneider National cannot be held liable for Mr. Loftus' actions.